ENRIQUE CALDERÓN, Plaintiff and Appellant, *v.* SOFÍA VALLE-CILLO WIDOW OF CALDERÓN ET AL., Defendants and Appellees.

No. 11038. Argued December 4, 1953.—Decided January 25, 1955.

*Bolívar Pagán* for appellant. *R. Rivera Zayas, G. Rivera Cestero* and *Milton F. Rúa* for appellees.

Mr. Justice Belaval delivered the opinion of the Court.

In accordance with § 125 of the Civil Code of Puerto Rico, to prove his status as a natural son the plaintiff-appellant had to allege in a complaint of filiation *et al* "that at the time of the plaintiff's conception, Alfonso P. Calderón '(alleged natural father of the plaintiff-appellant)' appeared to be married to Jesusa Jiménez Correa, but their marriage is legally null as well as ineffective and nonexistent for the following reasons: (1) because when the marriage took place there was no compliance with legal solemnities since two witnesses were not present at the ceremony, and (2) because when the parties contracted marriage they did so with the preconceived and deliberate purpose, which they carried out, of not having any married life together."

Recognizing the necessity of deciding first the alleged nullity of the marriage celebrated between Alfonso P. Calderón and Jesusa Jiménez Correa, the court below ordered a separate trial of the foregoing legal question in accordance with Rule 42(b) of the Rules of Civil Procedure of Puerto Rico. After holding a hearing, the court below found, among others, the following facts: on May 14, 1912, Alfonso Calderón Ri-

vera married Jesusa Jiménez Correa in a civil ceremony performed before the Municipal Judge of San Juan, Manuel Gaetán Barbosa; the marriage was performed in the family residence of Quiñones de Lugo, 65 San Sebastián Street, San Juan, Puerto Rico, with the latter and María Luisa Quiñonez de Lugo acting as witnesses and signing the marriage certificate; on May 15, 1912, the official in charge of the Civil Register, at page 325, entry number 152, of Book No. 7 of the Civil Register, registered the marriage of Alfonso Calderón Rivera and Jesusa Jiménez Correa with the following certificate of marriage:

"CERTIFICATE OF MARRIAGE.

"In San Juan, P. R., at 10 o'clock in the morning, May 15, 1912, I, Manuel Moraza Díaz, Official in Charge of the Civil Register, certify that there is no previous matter in the Register to prevent the transcript which I enter in this certificate of the pertinent data from a sworn declaration and certificate of a marriage which has been filed in this office, and that I have before me, such data being the following:

"1.—In San Juan, P. R., on May 14, 1912, Alfonso Calderón Rivera, 28 years of age, bachelor, of the industrial profession, born in Carolina, P. R., resident of number——, "General" Street, Carolina, P. R., married Jesusa Jiménez, 24 years of age, single, worker, born in Carolina, P. R., resident of number ——, "General" Street, Carolina, P. R., in a civil ceremony performed before Manuel Gaetán Barbosa, Municipal Judge of San Juan, P. R.

"2.—The contracting party Alfonso Calderón Rivera is the legitimate son of Pedro Calderón (deceased), born in Carolina, and Dolores Rivera (living), born in Carolina, and the contracting party Jesusa Jiménez is the legitimate daughter of José Monserrate Jiménez and of Francisca Rita Correa, both living, the former born in Carolina, the latter in Loíza, P. R.

"3.—That    .    .    .    .    .    .    .

"I copy this certificate before two witnesses present, one a resident of number —— of street —— of ——, and the other a resident of number —— of street —— of ——, and, having been read and approved by those present, I affix the official

seal of this office, and after signing the witness who knew how to sign for himself and for the witness who did not know how at his request, I sign.

|  Witness  |  Witness  |
|---|---|

(Attorney)   Manuel Moraza
Official in Charge of
the Civil Register;

that the Civil Register books of San Juan corresponding to the years 1912 and 1913, in which the certificates of marriages performed in that period in the capital were recorded, did not contain any space to put the names of those who had acted as witnesses at the marriage ceremony, although there was space to indicate the witnesses who were present at the time of recording the certificate; the original certificates of marriage which were recorded in the Marriage Book of the Civil Register have not been preserved by the Official in Charge of the Civil Register; they do not exist at the time of the hearing, and there is no knowledge of them except for what had been recorded in the Civil Registry books which are now in the custody of the Bureau of Vital Statistics of the Department of Health of Puerto Rico; that on December 5, 1913, Jesusa Jiménez Correa filed a divorce action against Alfonso Calderón Rivera in the former District Court of San Juan, alleging that the defendant had abandoned her from the very day of the marriage ceremony, and on December 29, 1913, the District Court of San Juan entered judgment in favor of Jesusa Jiménez Correa on the ground of desertion by the husband; that since Enrique Calderón, the plaintiff in this case, was born on February 9, 1914, it was evident that if the plaintiff had had a normal gestation period, he would have been conceived nine months before, that is, on June 9, 1913, or if there had been a gestation period of seven months, he would have been conceived on August 9, 1913, or if the period had been six months, he would have been conceived on September 9, 1913, and there-

fore, since Alfonso P. Calderón was married to Jesusa Jiménez Correa from May 14, 1912, until December 29, 1913, it was evident that the plaintiff-appellant had not been conceived while his parents, with or without dispensation, could marry; that the plaintiff-appellant here did not prove that when Alfonso P. Calderón married Jesusa Jiménez Correa they did so with the preconceived and deliberate purpose of not leading a married life together in any manner; and on the contrary, the Court finds it proved that the marriage has always been considered valid and legal both by Jesusa Jiménez Correa and by Alfonso P. Calderón.

By reason of the said findings the Court below dismissed the complaint with respect to all rights of the plaintiff-appellant to inherit from his alleged natural father, Alfonso P. Calderón, but permitted the action to continue solely to determine if the plaintiff-appellant has the right to bear the surname of his alleged natural father in accordance with the provisions of Act No. 243 of May 12, 1945. Not agreeing with the judgment, the plaintiff-appellant has appealed to this Court assigning the following errors: (1) "the lower Court erred in failing to hold that the marriage between Alfonso P. Calderón and Jesusa Jiménez Correa is null for lack of effective consent and because it was contracted for purposes inherently contrary to marriage; (2) the lower Court erred in admitting incompetent evidence on matters remote from the impugned marriage and in admitting oral evidence as to the presence of witnesses at the marriage of Alfonso P. Calderón and Jesusa Jiménez without previous allegation or proof that the marriage book of the Vital Statistics Register had disappeared, and in not holding that the marriage was null because of the absence of witnesses and their signatures; (3) the lower Court erred in holding valid the supposed marriage of Alfonso P. Calderón and Jesusa Jiménez Correa when it appears from the evidence offered that neither of the supposed contracting parties signed the certificate of marriage."

██ With respect to the first error relating to the nullity of the marriage for lack of effective consent and because it was contracted for purposes inherently contrary to marriage, the plaintiff-appellant relies on the statement made by Jesusa Jiménez Correa through her attorney Eugenio Benítez Castaño in the divorce action filed in the former District Court of San Juan which alleges: "from the day of the marriage ceremony the defendant abandoned the plaintiff, went to live separately from her, against her will, without her consent, and without any sort of legal cause; it must be noted that the defendant married because of certain criminal proceeding against him for the crime of seducing the plaintiff in which he had been sentenced to pay a fine of three thousand dollars, or a day in jail for each five dollars, the said marriage having taken place before judgment in the criminal proceeding; after the marriage the defendant appealed to the Supreme Court of Puerto Rico from the judgment based on seduction, and notwithstanding that he married the plaintiff, he never wished to live with her, nor did he help her in any manner, or go to her for anything; and when the Supreme Court affirmed the judgment against the defendant, he entered the penitentiary of San Juan to serve his sentence, more than a year having elapsed from the date the marriage took place until the defendant entered the penitentiary; he was pardoned shortly thereafter, and once free he has never concerned himself with the plaintiff; the plaintiff alleges that the defendant married her solely to lighten or diminish his criminal responsibility for the crime of seduction of which he was convicted, and that by his actions and declarations *the defendant never intended to live in marriage with the plaintiff*," (transcript 93 and 94).

The law involved in this case consists of the following sections of the Civil Code of Puerto Rico: section 69 which provides: "The requisites for the validity of a marriage are: 1. The legal capacity of the contracting parties. 2. *Their consent.* 3. Authorization and celebration of a matrimonial

contract according to the forms and solemnities prescribed by law"; § 70 as amended by Act No. 12, March 29, 1937, which provides: "The following persons are incapacitated to contract marriage: 1. One who is already legally married. 2. One who is not of sound mind. 3. A person of the male sex under eighteen years of age, and a person of the female sex under sixteen years of age. Marriage contracted by persons under the said age of puberty shall, nevertheless, be valid *ipso facto* and without an express declaration, if one day after having arrived at the legal age of puberty the parties shall have lived together without the representatives of either of them having brought suit against its validity, or if the woman shall have conceived before the legal age of puberty or before having established such suit; *And provided,* That every woman over fourteen and under sixteen years of age who has been seduced may contract marriage with the previous consent of her parents or tutor, and if these refuse it, with the consent of the district court of the place where the seduced woman resides; and every man over sixteen and under eighteen years of age who *is under an accusation of having seduced a woman* over fourteen and under sixteen years of age, may also contract marriage with the previous consent of his parents or tutor, and if these refuse it, with the consent of a district court of the place where the seduced woman resides; and such marriage shall be considered sufficient to bar all prosecution, in the same form as in the other cases referred to in § 262 of the Penal Code"; § 73 which provides: *"Consent is not valid:* 1. When given to an abductor by the abducted before the latter has recovered her liberty. 2. *When obtained by violence or intimidation."* Section 110 which provides: When a marriage has not been contracted according to the requirements of this code, the same is null and void"; § 111 which provides: "The right to an action for a declaration of nullity of a marriage, belongs to the parties to the marriage, to the public attorney, and to such other persons as

may have an interest in the annulment of the same. In case of *violence* or *intimidation, the action of nullity can only be exercised by the innocent party.*"

We must keep clearly in mind the concept of "intimidation" as substantially different from the concept of "violence." The former refers to moral compulsion or fear, while the latter refers to physical coercion. According to the understanding of the Civil Law of our time, intimidation is "action tending to intimidate, frighten or cause fear in the heart of a person; intimidation has the objective of deprivation of liberty, and in that sense it *constitutes a defect which affects the voluntariness of consent* and which annuls the juridical institution of marriage, since according to a primary principle of natural law, no one can be forced to marry or contract with a specific person without his deliberate and free consent"; 11 *Diccionario de Derecho Privado* 2389 (edition of the Editorial Labor S. A.), (1950). The right to petition for the nullity of a marriage where consent has been obtained through intimidation lies in favor of the innocent spouse. It is not then a public, but rather a private, action.

With respect to the private nature of the action, the Spanish theory of civil marriage is followed in Puerto Rico. The public interest of the State is the conservation of marriage and in this sense even those obtained through violence or intimidation are ratified for the sake of public interest, unless the innocent spouse demands their annulment.

In this case a defect in consent is alleged because the contracting party Alfonso P. Calderón was under threat of a criminal proceeding for seduction. On two occasions we have refused to recognize as intimidation requiring annulment the fact that an acquiescent contracting party found himself in a criminal proceeding for seduction. *López* v. *Valdespino*, 6 P.R.R. 171, 177, (Sulzbacher) (1904); *Fernández* v. *García*, 75 P.R.R. 443, (Ortiz) (1953). Besides, we must recognize that it has been legislative policy that a

marriage of the parties celebrated prior to trial is enough to stop a proceeding for seduction, § 262 of the Penal Code of Puerto Rico, which harmonizes with the amendment made in § 70 of the Civil Code of Puerto Rico by Act No. 12, of March 29, 1937, and which permits marriage between minors when one minor has been accused of the crime of seduction. But what is curious about this case is that the party who originally alleges intimidation is not the intimidated spouse, but the other spouse and she does not request annulment, but the dissolution of the marriage on the ground of desertion. On the other hand, the spouse possibly intimidated defends himself against the divorce complaint charging desertion, although he loses the case and subsequently, in an open will executed on July 26, 1939, before notary Raúl Benedicto (exhibit of the defendants), he admits "that his first marriage was with Jesusa Jiménez Correa with whom he had a daughter named Socorro Calderón Jiménez, that the marriage had been dissolved by divorce", and he designates that daughter his legitimate heir.

It is likewise undeniable that we must declare, even if only to legitimize a daughter conceived prior to marriage, that the marriage between Alfonso P. Calderón and Jesusa Jiménez Correa fulfills one of the most moral purposes of the marriage institution: the procreation of legitimate descendants.

With respect to the second error relating to the admission of evidence concerning the presence of witnesses at the marriage, it should be made clear that the evidence presented by the defendants appellees and not contradicted by plaintiff-appellant was to the effect that two witnesses were present when the marriage took place, although that fact does not appear in the certificate of marriage in the Civil Register. It is on this ultimate aspect of the question, that is, the fact that the names and addresses of the witnesses to the marriage ceremony do not appear in the marriage

certificate in the Civil Register, that the possible nullity of the marriage is based.

Since the marriage which is impugned was celebrated on May 14, 1912, we must examine the provisions of the Civil Code of Puerto Rico governing on that date and the provisions concerning registration of marriages celebrated in Puerto Rico contained in the "Act to establish a Law of Civil Registry" of March 9, 1911. Section 2 of the Act of March 10, 1904, in force in 1912, which is today § 76 of the 1930 edition of the Civil Code of Puerto Rico, provides that "all persons desirous of contracting marriage shall apply to any of the persons authorized to perform it as per the preceding section; the person before whom application is made, shall examine the applicant under oath as to the legal capacity of the contracting parties; such sworn declaration shall be reduced to writing, and must state the full name, age, civil status, profession or occupation, nature and domicile of each of the contracting parties, and of their respective parents, and the relation of consanguinity or affinity, if any there be, between the contracting parties, and should any of the parties have been previously married, it shall be so stated, as well as the manner of dissolution, whether by death, annulment or divorce, with the full name of the former spouse, and the date and place where the death occurred, or the court resolving the annulment or divorce and the date of the resolution; as well as the names, age and address of each of the children of the former marriage, if there be any; *the declaration shall be sworn to and signed by the applicant* before the person to whom the application is made, and for that purpose the persons authorized by this code to celebrate marriages are hereby authorized to administer oaths to such applicants." Section 4 of the Act of March 10, 1904, in force in 1912, which is today § 78 of the 1930 edition of the Civil Code of Puerto Rico, provides that: "It shall be the duty of the person celebrating the marriage ceremony, and within ten

days thereafter, to send to the official in charge of the civil register within the district wherein the marriage is celebrated, the sworn declaration mentioned in section 76, together with an indorsement thereon showing the time and place when and where the marriage was celebrated, which endorsement shall be duly signed by the person officiating, and attested by at least two witnesses to the marriage ceremony, whose domiciles shall also appear." Section 5 of the Act dated March 10, 1904, in force in 1912, which is today § 79 of the 1930 edition of the Civil Code of Puerto Rico, provides that: "The official in charge of the civil register, *upon the receipt of the declaration and indorsement* mentioned in the preceding section, *shall immediately record the same in the books of marriages* and file it in the records of his office". Section 21 of the Act to establish a Law of Civil Register, dated March 9, 1911, in force in 1912, provided that "for the purpose of making the entry of marriage, every person authorized by law, before whom the marriage has been performed, is obliged to present, within ten days following the performance of such ceremony, to the officer in charge of the Civil Register of the district in which the same took place, the affidavit made by the contracting parties pursuant to the provisions of law, indorsed with a memorandum of the date and place in which the marriage has been contracted, which memorandum must bear the signatures of the contracting parties and be certified by the witnesses present at the ceremony," which does not conflict with the provisions of § 4, Act of March 10, 1904, now § 78 of the 1930 edition of the Civil Code of Puerto Rico. Section 22 of the Act to establish a Law of Civil Register, dated March 9, 1911, in force in 1912, provided that: "The registration of marriage shall be made *by transcribing the pertinent details contained in the certificate of its celebration*, and setting forth also the following circumstances: 1. The place, hour, day, month and year in which the registration was

made. 2. The name and surname of the officer in charge of the Register, and 3. A statement to the effect that the Register contains no record which prevents the transcription. The above details shall be included in the proper record, in a separate paragraph, and before the transcription of the certificate is made, as aforesaid," which does not conflict with § 5, Act of March 10, 1904, in force in 1912, now § 79 of the 1930 edition of the Civil Code of Puerto Rico. Section 24 of the Act to establish a Law of Civil Register, dated March 9, 1911, in force in 1912, provided that: "To facilitate compliance with the foregoing sections, *it shall be sought* to have the certificate of marriage contain, at least, the following information: 1. The place, day, month and year in which the marriage takes place. 2. The name and capacity of the officer or minister of religion who has performed the same. 3. The names, surnames, age, status, place of birth, profession or occupation and domicile of the contracting parties. 4. The names, surnames and places of births of the parents. 5. *The names, surnames and residences of the witnesses*, etc." which also does not conflict with § 5 of the Act of March 10, 1904, in force in 1911, now § 79 of the 1930 edition of the Civil Code of Puerto Rico. Section 153 of the 1911 edition of the Civil Code of Puerto Rico, in force in 1912, now § 85 of the 1930 edition of the Civil Code of Puerto Rico, provides that: "Marriage solemnized before January the first, 1885, when the law of Civil Registry took effect in Puerto Rico, shall be proven in the manner established by former laws. Those contracted afterwards *shall be proven only by certification from the book of marriages.* If this book shall have disappeared, any competent proof shall be admissible." Section 319 of the 1911 edition of the Civil Code of Puerto Rico, in force in 1912, now § 249 of the 1930 edition of Civil Code of Puerto Rico, provides "The registry of civil status, shall include the records or entries of births, *marriages*, emancipations, acknowl-

edgments and legitimations, and deaths, and shall be in charge of the secretaries of the municipalities." Section 320 of the 1911 edition of the Civil Code of Puerto Rico, in force in 1912, now § 250 of the 1930 edition of the Civil Code of Puerto Rico, provides that: "The records in the registry shall be evidence of the civil status, and any other evidence can be admitted only when such records have never existed *or the books of the registry should have disappeared or when a litigation is instituted before the courts."* Finally, § 76 of the Act to establish a Law of Civil Registry, of March 9, 1911, in force in 1912, provided that: "Every person, individual, public officer, minister of the Gospel, priest, physician or midwife, violating any of the provisions of this Act, *or failing to fulfill* any of the obligations imposed by the same, shall be guilty of a misdemeanor, and, upon conviction thereof, shall be punished with a fine not exceeding two hundred dollars ($200)."

Assuming, without deciding, that the provisions applicable to the marriage which is impugned in this case are the provisions of the Civil Code in force in 1912 and the provisions of the Act to establish a Law of Civil Registry of March 9, 1911, in force in 1912, and not the present provisions of the Act of Vital Statistics Registry, it is evident that nothing in the legal framework we have examined permits the conclusion that there is cause for the nullity of a marriage celebrated before an authorized official and two witnesses when the marriage certificate in the period of our earlier civil register fails to indicate who the two marriage witnesses were. [5] In the first place, the transfer of the sworn declaration and endorsement, that is, the certificate of the marriage celebration, does not have to be a literal transfer of the contents of these documents. [6] In the second place, the legal provision which states what the certificate issued by the official in charge of the Civil Register should include, is directive rather than mandatory since the language used

says: "It shall be sought to have the certificate of marriage contain, at least," the names, surnames and residences of the witnesses. In the third place, when any issue arises against the validity of a marriage, in accordance with the provisions of § 320, marriage certificates lose their conclusive character. This does not conflict with § 38 of Act No. 24 of April 22, 1931, creating the Vital Statistics Registry of Puerto Rico, as subsequently amended by Act No. 25 of April 17, 1936, Act No. 112 of May 6, 1941, Act No. 99, of May 12, 1943, and Act No. 188, of May 2, 1951 which provides that: "A copy of the record of any birth, *marriage* or death, after being certified by the Commissioner of Health or by any person by him authorized, *shall constitute prima facie evidence* before all courts of justice of the facts set forth therein." [7] In the fourth place, assuming, without deciding, that the absence of two witnesses from the marriage celebration is one of the causes for nullity provided by the Civil Code of Puerto Rico, that cause refers exclusively to the solemnities required during the celebration of the marriage, and not to the formalities required for the recordation of the marriage which is a subsequent act, performed by another official before whom neither the contracting parties, the civil official, nor the religious minister need appear in order to insure the validity of the marriage ceremony. [8] In the fifth place, the only provision of the aforesaid Act to establish a Law of Civil Registry touching on negligence on the part of officials of the former civil registers in the performance of their duties is the imposition of a fine, but there is nothing in that law which declares a registration void because of an omission on the part of the officials in charge of the former civil registers. Nor is there anything from which one could infer a legislative intent to make any such defect in registration a cause for nullity of a marriage.

As a question of evidence, we are satisfied that it was proved in the separate trial that the original sworn

declaration and notice, or the original marriage certificate, from which the data to record the marriage certificate *in extractus* were taken, had disappeared. Therefore, the presence of two witnesses at the marriage celebration could be proved by any other evidence. In this case the best possible evidence was obtained, that is, the personal statements of the witnesses themselves.

With respect to the third error relating to the possible nullity of the marriage because it did not appear from the evidence offered that neither of the supposed contracting parties signed the marriage certificate, the assignment is frivolous. What the contracting parties sign is a sworn declaration consisting of personal data about themselves, their age, civil status, filiation, previous marriages, children procreated in former marriages, which is handed to the civil or religious official before whom the marriage is celebrated. Neither the 1902 Civil Code of Puerto Rico nor the 1911 Act to establish a Law of Civil Registry requires the contracting parties to sign the certificate of marriage which the civil or religious official issues on the back of the sworn declaration, or to sign the marriage certificate which the Official in Charge of the Civil Register issues. This is still the law in Puerto Rico.

The judgment is affirmed.

Mr. Justice Negrón Fernández did not participate herein.